```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------ X
DIEGO ENRICO MALTA,            :
                               :
                Plaintiff,     :
                               :
    -against-                  :
                               :
FOX HORAN & CAMERINI, LLP,     :
KATHLEEN M. KUNDAR, ESQ.,      :
WILLIAM IRA KAPLAN, ESQ., and  :
ROMAN ANDREW SHORE, ESQ.,      :
                               :
                Defendants.    :
------------------------------ X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/12/2018

No. 17 Civ. 3228 (JFK)
**OPINION & ORDER**

APPEARANCES

FOR PLAINTIFF DIEGO ENRICO MALTA:
    Jacques Catafago, Esq.
    CATAFAGO FINI LLP

FOR DEFENDANTS FOX HORAN & CAMERINI, LLP,
KATHLEEN M. KUNDAR, ESQ., WILLIAM IRA KAPLAN, ESQ.,
and ROMAN ANDREW SHORE, ESQ.:
    Peter M. Levine, Esq.

**JOHN F. KEENAN, United States District Judge:**

    Before the Court is a motion by Defendants Fox Horan & Camerini, LLP ("Fox Horan"), Kathleen M. Kundar ("Kundar"), William Ira Kaplan ("Kaplan"), and Roman Andrew Shore ("Shore," and together, "Defendants") to dismiss Plaintiff Diego Enrico Malta's ("Plaintiff") complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons stated below, Defendants' motion to dismiss is denied.

1

## I. Background

Unless otherwise noted, the following facts are drawn from the complaint. Plaintiff is an individual domiciled in Dade County, Florida. (Compl. ¶ 1.) Defendant Fox Horan is a New York State limited liability partnership, with its principal place of business in New York County. (Id. ¶ 2.) Defendants Kundar and Kaplan are individuals licensed to practice law in New York State and, during the relevant time period, partners at Fox Horan. (Id. ¶¶ 3-4.) Defendant Shore is an individual licensed to practice law in New York State and a counsel at Fox Horan. (Id. ¶ 5.)

On February 18, 2016, Plaintiff and his brothers, Robert and Joseph Malta, hired and retained Defendants under a joint representation agreement to provide legal services in connection with estate planning. (Id. ¶¶ 13, 15.) Specifically, Defendants were hired to consider a transfer of all of Plaintiff's shares in two limited liability companies, 106-108 West 73rd Street Associates, LLC (which owns the real property located at 106-108 West 73rd Street), and 110 West 73 Associates, LLC (which owns the real property located at 110-112 West 73rd Street), to his mother, Dina Malta. (Id. ¶ 15.) At the time Defendants were retained, Plaintiff owned 100 percent of the shares in 106-108 West 73rd Street Associates, LLC, and 49 percent of the shares in 110 West 73 Associates, LLC. (Id. ¶ 16.) The appraised value

of the real estate at 106-108 West 73rd Street is $9.7 million and the appraised value of the real estate at 110-112 West 73rd Street is $13.8 million. (Id. ¶ 17.) Shortly after February 18, 2016, Kaplan, as counsel for Plaintiff and his two brothers, prepared a gift agreement (the "Gift Agreement"), whereby Plaintiff was to gift the assets in the two limited liability companies to his mother for no stated consideration. (Id. ¶ 18.) From February 18, 2016 to May 16, 2016, Defendants failed to communicate with Plaintiff in any manner whatsoever, or to send Plaintiff bills for services rendered. (Id. ¶¶ 14, 19.) The Gift Agreement was executed on May 16, 2016. (Id. ¶ 18.)

At no time prior to the execution of the Gift Agreement did Defendants advise Plaintiff of potential negative tax consequences. (Id. ¶ 20.) Federal tax law then in effect mandated that any gift exceeding $5,450,000 would be taxed at a 40 percent rate. (Id.) In addition, Defendants did not request any appraisals on the properties, which would have been required to compute any tax consequences Plaintiff would incur as a result of the gift to Dina Malta. (Id. ¶ 22.) Plaintiff alleges that Defendants prepared gift tax forms in connection with the gift, but only did so a month after the execution of the Gift Agreement, and failed to provide these forms or any information regarding taxes to Plaintiff at that time, or ever. (Id. ¶ 24.)

Plaintiff has now been informed by his accountant that his gift tax liability will be $4,162,400. (Id. ¶ 25.)

On May 2, 2017, Plaintiff filed the complaint in this action, alleging one claim of legal malpractice. Plaintiff alleges that Defendants were negligent in failing to (1) advise Plaintiff of the tax consequences of the Gift Agreement, (2) request appraisals on the properties prior to the execution of the Gift Agreement, (3) send bills to Plaintiff for services rendered, and (4) communicate with Plaintiff in any manner whatsoever about the Gift Agreement or estate planning in general. (Id. ¶ 35.) Plaintiff alleges that Defendants' legal representation was a clear departure from the standards and actions of other attorneys similarly situated and, but for Defendants' negligence, Plaintiff would not have signed the Gift Agreement and sustained damages in the form of a more than $4 million gift tax liability. (Id. ¶¶ 29, 36.)

On August 9, 2017, Defendants moved to dismiss the complaint. Defendants argue that (1) Plaintiff has failed to allege proximate cause and actual damages, two required elements of a legal malpractice claim, and (2) Plaintiff is estopped from repudiating the gift tax while accepting the significant benefits of the estate plan. (Defs.' Mem. of L. in Supp. of Mot. to Dismiss at 1.)

**II. Discussion**

**A. Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Matson v. Bd. of Educ., 631 F.3d 57, 63 (2d Cir. 2011) (internal quotation marks omitted). On a motion to dismiss, a court must accept the factual allegations in the complaint as true and draw reasonable inferences in the plaintiff's favor. Tsirelman v. Daines, 794 F.3d 310, 313 (2d Cir. 2015).

To state a claim for legal malpractice, a party must allege that: (1) the attorney was negligent, (2) such negligence was a proximate cause of plaintiff's loss, and (3) actual damages. Rubens v. Mason, 387 F.3d 183, 189 (2d Cir. 2004). To properly plead negligence, a party must aver that an attorney's conduct "fell below the ordinary and reasonable skill and knowledge commonly possessed by a member of his profession." Grago v. Robertson, 370 N.Y.S.2d 255, 258 (1975). To establish the elements of proximate cause and actual damages, the plaintiff must show that "but for" the lawyer's negligence he would not

have suffered the injury. <u>AmBase Corp. v. Davis Polk & Wardell</u>, 8 N.Y.3d 428, 434 (2007). The proximate cause requirement is a "high bar to attorney malpractice liability, seek[ing] to insure a tight causal relationship exists between the claimed injuries and the alleged malpractice, and demand[ing] a nexus between loss and injury." <u>Flutie Bros. v. Hayes</u>, No. 04 CIV. 4187 (DAB), 2006 WL 1379594, at *5 (S.D.N.Y. May 18, 2006) (internal quotation marks omitted).

"[A] cause of action for legal malpractice pose[s] a question of law which [can] be determined on a motion to dismiss." <u>Achtman v. Kirby, McInerney & Squire, LLP</u>, 464 F.3d 328, 337 (2d Cir. 2006). Dismissal is appropriate where it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law. <u>Parkcentral Glob. Hub Ltd. v. Porsche Auto Holdings SE</u>, 763 F.3d 198, 208-09 (2d Cir. 2014). The Court may take judicial notice of "admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action." <u>Harris v. N.Y.S. Dep't of Health</u>, 202 F. Supp. 2d 143, 173 n.13 (S.D.N.Y. 2002).

**B.  Proximate Cause and Actual Damages**

Defendants first argue that Plaintiff has failed to allege proximate cause.  To establish proximate cause, Plaintiff must allege "a tight causal relationship" between the claimed injury and the alleged malpractice. Farrell Family Ventures, LLC v. Sekas & Assocs., LLC, 863 F. Supp. 2d 324, 330 (S.D.N.Y. 2012).  To plead causation adequately, the party must show that "but for the attorney's negligence, what would have been a favorable outcome was an unfavorable outcome." Id.  The question of proximate cause can be determined as a matter of law when the plaintiff's alleged injuries are caused by "independent intervening acts which operate upon but do not flow from the original negligence." Hain v. Jamison, 28 N.Y.3d 524, 529 (2016).

Defendants argue that, according to Plaintiff's "admissions" in outside proceedings, any injury Plaintiff may have suffered was caused by the intervening acts of Robert Malta or Plaintiff himself.  In considering a motion to dismiss, "[c]ourts ordinarily may take judicial notice only of the fact that documents were filed in unrelated cases, not their contents.  Courts may, however, take judicial notice of the contents of party admissions that contradict statements made to the court being asked to consider them." Juch-Tech, Inc. v. Intelsat Corp., No. 13CV8885-LAK-FM, 2014 WL 4160225, at *4 n.4

7

(S.D.N.Y. Aug. 21, 2014), report and recommendation adopted, No. 13-CV-8885 LAK, 2014 WL 7239483 (S.D.N.Y. Dec. 19, 2014).  On July 22, 2016, Plaintiff commenced an action in the Supreme Court of the State of New York, New York County, against Robert and Dina Malta (the "State Action") seeking a declaration that the Gift Agreement was null and void. (Defs.' Mem. at 5.)  On October 19, 2016, during the pendency of the State Action, Plaintiff filed a Chapter 11 bankruptcy petition in this District (the "Bankruptcy Petition"). (Id. at 7.)  Defendants contend that Plaintiff's statements in the State Action and the Bankruptcy Petition are "admissions" because they contradict allegations in the complaint and show that Plaintiff's injury was the result of independent intervening acts. (Id. at 12-13.)

Defendants assert that, according to Plaintiff's allegations in the State Action, the execution of the Gift Agreement was actually a scheme engineered by Robert Malta to steal Plaintiff's assets, and when Plaintiff signed the Gift Agreement, without counsel present, he was "heavily intoxicated and under the [] influence of . . . Xanax, rendering him devoid of judgment and capacity to execute [the] document." (Levin Decl. Ex. 2 ¶¶ 33-34, ECF No. 29-1 at 9 (filed Oct. 20, 2017) [hereinafter State Compl.].)  Plaintiff also averred in his debtor's declaration that he filed the Chapter 11 bankruptcy petition "to deal with recent fraudulent efforts engineered by

8

my brother, Robert Malta, to attempt to strip me of all of my assets under the pretext of estate planning" and that he signed the Gift Agreement "at the request of one of the attorneys at Fox Horan & Camerini, without explaining to me the tax consequences of the transaction." (Levine Decl. Ex. 3 ¶¶ 3, 16, ECF No. 29-1 at 21 (filed Oct. 20, 2017) [hereinafter Malta Bankr. Decl.].)  Accordingly, Defendants argue, the preparation of the Gift Agreement "merely furnished the occasion for Robert Malta to deceive and swindle his brother," as explained in Plaintiff's contradictory "admissions." (Defs.' Mem. at 12.)  In addition, Defendants contend that Plaintiff's own reckless and extraordinary conduct constitutes an intervening and superseding event that severs any causal nexus between Defendants' alleged negligence and the Plaintiff's alleged injury. See Tisdell v. Metro. Transp. Auth., 139 A.D.3d 844, 846 (N.Y. App. Div. 2d Dep't 2016).

To support these arguments, Defendants point to Plaintiff's statements regarding his drug and alcohol use and Robert Malta's role in the estate plan, including:  (1) Plaintiff was "addicted to Alprazolam," (State Compl. ¶ 11), (2) Plaintiff is "an alcoholic," (Id. ¶ 12), (3) Robert Malta took "advantage of [Plaintiff's] alcohol and drug dependency issues," (Malta Bankr. Decl. ¶ 5), (4) Robert Malta "never had any intention of establishing a fair and equitable trust and was using the device

9

simply to take control of [Plaintiff's] assets," (Id. ¶ 15), (5) "the estate planning and proposed trust was nothing more than a hoax and fraudulent scheme by [Robert Malta] to regain full control of all of the properties," (Id. ¶ 13), (6) Robert Malta instructed his personal attorney "to present the Gift Agreement for [Plaintiff's] execution . . . without the presence of [Defendants], despite full knowledge [that] Plaintiff was represented by said counsel," (State Compl. ¶ 33), (7) when Plaintiff signed the Gift Agreement he was "heavily intoxicated and under the [] influence of . . . Xanax, rendering him devoid of judgment and capacity to execute" the agreement, (Id. ¶ 34), and (8) Plaintiff became aware in June 2016 that "he had allegedly 'gifted' away all of his assets to his mother . . . at the behest of" Robert Malta without the presence of Defendants (Id. ¶ 35).

Plaintiff's statements in the State Action and Bankruptcy Petition do not qualify as contradictory admissions. None of the statements Defendants identify contradicts Plaintiff's allegation that Defendants did not inform Plaintiff of potential tax liabilities before he signed the Gift Agreement. Nor does Plaintiff state in either the State Action or Bankruptcy Petition that had he known about the tax implications, he would have signed the Gift Agreement anyway. Indeed, Plaintiff's allegations in the State Action and Bankruptcy Petition include

statements consistent with his allegations in this action, including (1) "[a]t no time herein until July 5, 2016 was the Plaintiff advised by [Defendants] that his proposed gift entailed significant tax consequences," (Id. ¶ 24), (2) "[a]t a time when I lacked the ability to make proper decisions . . . my brother and the law firm Fox Horan & Camerini, drafted a dubious one-page gift agreement, which I signed without an ability to understand its meaning and consequences," (Malta Bankr. Decl. ¶ 14), and (3) the Gift Agreement "was signed on or about May 9, 2016 at the request of one of the attorneys at Fox Horan & Camerini, without explaining to me the tax consequences of the transaction and with the attorney's knowledge that I did not have the capacity at that time to understand the document's meaning and significance," (Id. ¶ 16). Accordingly, the Court declines to take judicial notice of the contents of Plaintiff's statements in the State Action and Bankruptcy Petition.

Second, Defendants arguments regarding proximate cause are premature because "[a]t this early stage of the litigation . . . Plaintiff need only allege, not prove, the proximate cause element of the legal malpractice claim." Even St. Prods., Ltd. v. Shkat Arrow Hafer & Weber, LLP, 643 F. Supp. 2d 317, 322 (S.D.N.Y. 2008). Defendants contend that the complaint "alleges no more than [Defendants], as instructed, prepared [Plaintiff]'s Gift Agreement, which he signed before anyone from the firm

11

spoke to him about it." (Defs.' Mem. at 12.) On the contrary, Plaintiff alleges that "[b]ut for Defendants' legal malpractice and negligence" in failing to advise him of the tax consequences of the Gift Agreement, or failing to communicate with him in any manner whatsoever prior to the execution of the Gift Agreement, he "would not have signed the Gift Agreement" and would not have incurred a $4,162,400 gift tax liability. (Compl. ¶¶ 25, 35-36.) Although Defendants argue that any injury Plaintiff may have suffered was caused by Robert Malta or by himself, this is a question for the finder of fact. See Estate of Nevelson v. Carro, Spanbock, Kaster & Cuiffo, 259 A.D.2d 282, 285 (N.Y. App. Div. 1st Dep't 1999) ("Plaintiffs' showing is sufficient to create a question of fact on the issue of proximate cause, permitting the inference that ascertainable damages would not have occurred but for the alleged negligence."). Further, even if Robert Malta's or Plaintiff's own actions played a role in Plaintiff's decision to sign the Gift Agreement, "[u]nder New York law an injury can have more than one proximate cause." Farrell Family Ventures, LLC, 863 F. Supp. 2d at 333; see also Caruolo v. John Crane, Inc., 226 F.3d 46, 56 (2d Cir. 2000) ("It's not necessary for a defendant[ ] . . . to be the sole or even the dominant cause of [the plaintiff's] injuries in order to be considered proximate cause."). Accordingly, accepting Plaintiff's factual allegations as true, they are sufficient to

plead proximate cause at this stage. See, e.g., Small Bus. Bodyguard Inc. v. House of Moxie, Inc., 230 F. Supp. 3d 290, 322-23 (S.D.N.Y. 2017) (plaintiff adequately pleaded proximate cause in legal malpractice claim where he alleged that his attorney failed to file correct tax forms with the IRS and, but for the attorney's negligence, plaintiff would not have been exposed to a possible tax liability of $40,000 and additional legal fees required to correct the error).

Defendants also argue that Plaintiff has failed to allege actual damages, contending that "there is no allegation that [Plaintiff] has paid the gift tax or even filed a return showing a gift tax to be due." (Defs.' Mem. at 8.) However, a claim for malpractice accrues when a plaintiff "first receive[s] and rel[ies] on the defendant's work product and as a consequence of such reliance can become liable for tax deficiencies," not, as some defendants have tried to argue, "if and when the IRS assesses a deficiency." Seippel v. Jenkens & Gilchrist, P.C., 341 F. Supp. 2d 363, 375 (S.D.N.Y. 2004) (internal quotation marks omitted); see also In re Osborne, No. 13 CV 2803(VB), 2013 WL 11317662, at *4 (S.D.N.Y. Oct. 9, 2013) (injury for malpractice occurred when plaintiff relied on her attorneys' advice during their representation during Chapter 11 proceedings because "all the facts necessary to her alleged malpractice cause of action had occurred"). Plaintiff alleges that

13

Defendants prepared the Gift Agreement, which Plaintiff executed on May 16, 2016, and that he is now liable for a $4,162,400 tax liability after Defendants failed to advise him of the potential tax consequences, or communicate with him in any manner whatsoever. These allegations are sufficient to allege actual damages and survive a motion to dismiss.

### C. Estoppel

On January 31, 2017, Plaintiff agreed to discontinue the State Action with prejudice. (Defs.' Mem. at 6.) In an affidavit filed in the State Action dated February 1, 2017, Plaintiff stated that he "[did] not wish to litigate against my family. I have reconciled all issues in this case and want to discontinue the action." (Levine Decl. Ex. 12 ¶ 4, ECF No. 29-2 at 5 (filed Oct. 20, 2017).) Defendants argue that the discontinuation of the State Action shows that Plaintiff is "seemingly content to have Dina Malta own the real estate holding companies," an arrangement that "provides many advantages for [Plaintiff] and his children," including the ability to pass the property on to Plaintiff's descendants without its being subject to the estate tax. (Defs.' Mem. at 15.) Defendants contend that the benefits of the estate plan come at the price of a gift tax, a price that Plaintiff knew of "when he made peace with his family." (Id.) Accordingly, because Plaintiff has accepted the benefits of the gift

transaction, while aware of the potential gift tax, Defendants contend that Plaintiff "may not disclaim his obligation to pay the gift tax, and he is estopped from attempting to impose his obligation upon" Defendants. (Id. at 16.)

Defendants provide no legal or equitable basis, other than a vague theory of estoppel, for their argument that Plaintiff is "estopped" from bringing a legal malpractice claim for incurring unknown tax liabilities related to the formation of an estate plan where he has accepted the (entirely hypothetical) benefits of that estate plan. Moreover, Defendants do not argue that there was any detrimental reliance their part, which is an "essential element of estoppel." 28 Am. Jur. 2d Estoppel and Waiver § 2 (2018). Courts in this District have held that reliance is "a fact-specific inquiry generally considered inappropriate for determination on a motion to dismiss." Glidepath Holding B.V. v. Spherion Corp., 590 F. Supp. 2d 435, 459 (S.D.N.Y. 2007); see also Bennett v. U.S. Lines, Inc., 64 F.3d 62, 65 (2d Cir. 1995) ("[W]hether estoppel applies presents an issue of fact."). Accordingly, the Court declines to further consider Defendants' estoppel arguments.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is DENIED and the Clerk of Court is respectfully directed to terminate the motion docketed at ECF No. 28.

**SO ORDERED.**

Dated:      New York, New York
            March 12, 2018

                                    /s/ John F. Keenan
                                    _____
                                    John F. Keenan
                                    United States District Judge