I7QKMALC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   DIEGO ENRICO MALTA,

4                   Plaintiff,

5            v.                            17 CV 3238 (JFK)

6   FOX HORAN & CAMERINI LLP,
    et al.,
7
                    Defendants.
8
    ------------------------------x
9                                          New York, N.Y.
                                           July 26, 2018
10                                         11:18 a.m.

11  Before:

12                    HON. JOHN F. KEENAN,

13                                         District Judge

14                         APPEARANCES

15  CATAFAGO FINI LLP
         Attorneys for Plaintiff
16  BY:  JACQUES CATAFAGO

17  PETER M. LEVINE
         Attorney for Defendants and Third-Party Plaintiffs
18
    CATAFAGO FINI LLP
19       Attorneys for Third-Party Defendants
    BY:  ADAM BRAD SHERMAN
20

21

22

23

24

25

I7QKMALC

1              (Case called)

2              THE COURT:  What we have here before us today is a

3      motion to dismiss the third-party complaint.  The motion is

4      being brought by the third-party defendants.  We are going to

5      have first argument, so it's going to be -- my appearance

6      doesn't make quite clear to me who is the third-party

7      defendants' lawyer.

8              MR. SHERMAN:  I am, your Honor.  Adam Sherman.

9              THE COURT:  Okay.  I'll hear you, Mr. Sherman.  You're

10     the movant, right?

11             MR. SHERMAN:  Yes.

12             THE COURT:  Okay.  Go to the lectern.  Yes, go ahead.

13             MR. SHERMAN:  Okay, your Honor.

14             In this action, I represent myself and my client,

15     Robert Malta.  I'll begin with the statement that I understand

16     that the counsel for the defendants, Peter --

17             THE COURT:  You're appearing pro se, as it were?

18             MR. SHERMAN:  Yes.  Yes, your Honor.

19             THE COURT:  Okay, fine.

20             MR. SHERMAN:  I'll begin by saying that I understand

21     counsel for the defendants, Peter Levine, has a job to do, he

22     has a job to protect his client zealously, but this third-party

23     complaint is, frankly, inappropriate.

24             THE COURT:  When you say it's inappropriate, doesn't

25     the good-faith requirement of the New York General Obligations

I7QKMALC

1  Law -- I think it's 15-08 -- 15-108 really -- doesn't that

2  apply to both the stipulation in the state action and the

3  March 2018 releases between Diego Robert and yourself?

4          MR. SHERMAN:  Well, in the defendants' moving papers,

5  they advance different arguments for me and different arguments

6  for Robert Malta.  Beginning with myself, they do not argue the

7  good-faith requirement of 15-108.  Instead, they advance an

8  argument that the statute itself does not apply to me.

9          Beginning with that, their premise for that argument

10  is that the 3217 stipulation, which discontinued the state

11  court action, which did not mention me, which plaintiff never

12  sued me, precludes the applicability of GOL 15-108.  There's no

13  case that has ever held such a proposition.

14          Plainly -- and as a broader statement, for both

15  third-party defendants, there's no financial success that's

16  possible, even if what they're saying is true, because of GOL

17  15-108(a), which entitles the defendants, to the extent that

18  the viability of what they're saying is going to be a setoff at

19  trial, so there will be no reason to seek contribution because

20  the plaintiff will have the reduced recovery.

21          But regarding me, the crux of their argument is that

22  the statute doesn't apply.

23          THE COURT:  Does that answer my question whether the

24  good-faith requirement applies to both the stipulation and to

25  the relief?

I7QKMALC

1      MR. SHERMAN:  It does apply to both, yes.  Yes, your

2   Honor.

3      THE COURT:  Now, as I understand your argument and

4   your papers, you're saying that the conclusory allegations of

5   bad faith relative to the delivery of the release won't survive

6   a motion to dismiss, right?

7      MR. SHERMAN:  Yes.

8      THE COURT:  So I'm asking you this now:  Aren't those

9   allegations, that Diego and Robert entered into the stipulation

10   in state court as part of a scheme to -- and I'm using the

11   quote now -- "impose on the defendants Diego's professed

12   obligation to pay an alleged gift tax," isn't that enough to

13   show that Diego and Robert cooperated improperly to extract

14   from the defendants more than their equitable share of damages?

15   And doesn't that create an issue for the fact-finder?  And if

16   that's all so, how do I grant the motion?

17      MR. SHERMAN:  The keywords -- the answer to that is,

18   no, it doesn't because of the last part of your statement, to

19   extract more than the fair share of equitable damages.  That is

20   an impossibility here because of the setoff provision of

21   15-108(a).  That will never happen.

22      THE COURT:  All right.  Go ahead.  I cut you off a few

23   times.

24      MR. SHERMAN:  So, moving next to Robert Malta, the

25   crux of their good-faith argument, as the defendants only

I7QKMALC

1    assert that regarding Robert Malta, that a declaration

2    submitted in opposition to the motions to dismiss in this case,

3    which was properly denied, they allege that Robert Malta

4    committed perjury in that declaration.  However, a review of

5    that declaration makes it very clear that it's completely

6    consistent with the allegations that they never -- the

7    defendants never explained the tax consequences of his gift to

8    Robert Malta.  They allege that a mere telephone call sometime

9    in February, that there may be gift taxes somewhere in the

10   future if transfers exceeded a certain threshold amount.  That

11   is not an explanation.  That's simply a vague statement that

12   Robert Malta, who is not an attorney, not a CPA, could not have

13   understood.

14        Simply to say that they've made -- basically on the

15   eve to amend pleadings, they have reformalized this idea based

16   on the evidence that I submitted, including the Special Master

17   Daniel Capra's report, which basically said that there is a

18   high bar to prove, to even assert, any type of good faith

19   argument.  And they've tried to surround a declaration that's

20   simply perjurous and say that he committed perjury.  When you

21   look at the declaration and the third-party complaint, it's

22   clearly not.

23        THE COURT:  About the fact that the defendants here

24   were not parties to the state action -- they weren't parties,

25   right?

I7QKMALC

1          MR. SHERMAN:  Right.

2          THE COURT:  Okay.  Now, if they weren't parties, how

3   is there res~judicata?  How does it bar their claims here?

4          MR. SHERMAN:  I'm sorry, I don't understand the

5   question.  Are you saying --

6          THE COURT:  Well, the defendants here were not parties

7   to the state action, right?

8          MR. SHERMAN:  Right.

9          THE COURT:  So how is that res~judicata?  How is it

10   that res~judicata bars their claims for contribution here?

11          MR. SHERMAN:  Because the plaintiff released Robert

12   Malta by virtue of the 133217 stipulation that operates as a

13   release.  And now, since it operates as a release -- and, also,

14   as a side matter, that underlying case dealt with different

15   damages.  The plaintiff was seeking to void the agreement.  If

16   the agreement is voided, there's no tax consequences.  Here,

17   the agreement can't be voided.  So there would be the flowing

18   tax consequences.

19          But as a threshold issue, the plaintiff settled his

20   claim with Robert Malta as a release, not as a judgment as to

21   liability, which is why 15-108(d) applies.

22          THE COURT:  What else do you have?

23          MR. SHERMAN:  Nothing further, your Honor.

24          THE COURT:  All right.  Thank you.

25          Who is going to argue next?

I7QKMALC

1          MR. CATAFAGO:  Your Honor, may I speak for the

2     plaintiff?

3          THE COURT:  For the plaintiff or the third party?

4          MR. CATAFAGO:  For the plaintiff.

5          THE COURT:  I'm not sure what you have to do with the

6     motion, but, all right, go ahead.

7          MR. CATAFAGO:  I appreciate it.

8          THE COURT:  Identify yourself for the record.

9          MR. CATAFAGO:  So, Judge, I'm --

10          THE COURT:  You represent Diego, right?

11          MR. CATAFAGO:  Yes, your Honor.

12          THE COURT:  Okay.

13          MR. CATAFAGO:  So, yesterday, your Honor, we concluded

14     the third of the three party defendants' deposition, Andy

15     Shore.  He is a tax guy, and he followed the other individual

16     defendants who were photographed on June 13th and 15th.  And we

17     asked specifically what proof, what evidence do you have of

18     anything about a scheme, a premeditated scheme in settling the

19     state court action, and his response is:  I don't know, I don't

20     know.

21          So, Judge, if you look at Iqbal and the line from the

22     Second Circuit in this court, very clearly, you can't just

23     claim conspiracy, you can't just claim a scheme, without facts.

24     The only fact that they put in, as Attorney Sherman said, is

25     after the fact, they amended to claim some kind of, quote,

I7QKMALC

1    perjury in the successful opposition to the motion to dismiss

2    this action.  So when Mr. Robert Malta said they never

3    explained to me the draconian effects of the tax consequences,

4    is that his opinion or is that perjury?  Is that enough to show

5    a scheme or bad faith?  As a matter of law, it's not.  And if

6    you look at the depositions of June 13, 15, and July 25th and

7    all of the documents they produced under Rule 34, there is not

8    one shred of evidence, starting with the retainer agreement,

9    showing that they ever explained the tax consequences, either

10   to Robert Malta or to Diego Malta.

11            Now, I get it, Judge, this is a Rule 3211, this is

12   outside the pleadings, but they have opened the door when they

13   started talking about my office, and Adam Sherman's office, and

14   all this side --

15            THE COURT:  Well, you're not really a party.

16            MR. CATAFAGO:  I'm not a party.

17            THE COURT:  So I'm sort of doing you a favor

18   permitting you to argue on this one.

19            MR. CATAFAGO:  I appreciate it.  But I will tell you,

20   Judge, in 34 years, I've never seen the good-faith language of

21   15-108 applied the way the third-party plaintiffs seek to apply

22   it.  This is a first.  And when you couple it with Iqbal and

23   the standards of Iqbal, it fails.

24            Thank you.

25            THE COURT:  Okay.  Thank you.

I7QKMALC

1          Mr. Levine, you are a party?

2          MR. LEVINE:  I am.

3          THE COURT:  You're the third-party plaintiff and the

4     defendant in the main action.  Okay, go ahead.

5          MR. LEVINE:  In the reply memorandum, the third-party

6     defendants abandoned their argument that the issue of good

7     faith need not be considered when deciding the effect of a

8     release under General Obligations Law 15-108.  They agree with

9     us that good faith is a requirement under the statute.  And

10    they agree that perjury is an indication of bad faith that can

11    take a release out of the statute.  They cite a case right on

12    point.

13         They dispute, however, that Robert Malta committed

14    perjury.  And to prove this, they parse the words of his

15    declaration, and they parse the words of the text of the

16    amended third-party complaint, and they come to the factual

17    conclusion, no, there was no perjury.  That's just an issue of

18    fact for the jury.

19         THE COURT:  Well, let me ask you something about this

20    release here.  As I understand the statute, 15-108(b) reads --

21    and I'm reading the statute, "A release given in good faith by

22    the injured person to one tortfeasor as provided in (a)

23    relieves him" -- that means that one tortfeasor -- "from

24    liability to any other person for contribution as provided in

25    Article XIV of the Civil Practice Law & Rules."

I7QKMALC

1          That's the law.  Aren't the defendants' contribution

2     claims against Robert and Sherman clearly barred?

3          MR. LEVINE:  No.

4          THE COURT:  Why not?

5          MR. LEVINE:  First, as to Sherman, that stipulation of

6     discontinuance does not mention him at all.  And the 15-108

7     says the releasee must be explicitly and clearly stated.  And

8     they don't even pretend that Adam Sherman is mentioned in that

9     stipulation of discontinuance.

10          And they have then abandoned their ipso facto argument

11    that because the principal, the client, Robert Malta, was

12    released, therefore, the attorney Adam Sherman was released.

13    No, that's not the law.  You have to say who's released, and

14    Adam Sherman, who was not a party in that state court

15    litigation, is not at all mentioned in that stipulation, and,

16    therefore, it does not effect a release against him.

17          As to Robert, that stipulation --

18          THE COURT:  Wait a minute, now.  If that's all so,

19    what does the clause in the statute mean?

20          MR. LEVINE:  Which clause, your Honor?

21          THE COURT:  "Any other person from contribution."

22    What does that mean?

23          MR. LEVINE:  It means --

24          THE COURT:  It relieves him from liability to any

25    other person from contribution.

1         MR. LEVINE:  Right, who is liable or claimed to be

2    liable.

3         But you have to look at the entire statute.  It's one

4    unified rule.  All elements of the statute must be complied

5    with.  It says, in (a), "When a release or covenant not to sue

6    is given to one or more persons liable or claimed to be liable,

7    it does not discharge any of the other tortfeasors from

8    liability unless its terms expressly so provide."  And the

9    stipulation did not expressly provide for a release of Adam

10   Sherman.  So that stipulation doesn't help him.

11        As to Robert Malta, it doesn't help him because Diego

12   Malta, his brother, did not deliver that stipulation in good

13   faith.  And the amended third-party complaint alleges

14   sufficient facts to allow reasonable jurors to conclude Diego

15   Malta was not acting in good faith.  This action was commenced

16   one month after the stipulation was filed in the state court

17   action.  Diego Malta is represented by the same attorney who

18   represented Robert Malta in the state court action,

19   Mr. Catafago.

20        Robert Malta submits a perjurous affidavit in

21   opposition to this motion, to the motion to dismiss.  Robert

22   Malta voluntarily stepped into this case.  He is an interloper.

23   Now he is shocked and shocked about the accusation of

24   collusion.  He says, in the reply memo, oh, I submitted this

25   perjurous affidavit because I was defamed by the motion to

I7QKMALC

dismiss.  No, he wasn't defamed.  All we did was quote his

brother.  We quoted Diego's state court complaint regarding

Robert Malta's conduct, how Robert Malta and Adam Sherman,

according to Diego, duped Diego into signing that gift

agreement while he was drunk and high on Xanax.  We didn't make

that up.  Those are Diego's own words, through his attorney, in

the state court action.

          THE COURT:  Now, under the statute, the plaintiff will

have a reduced taking; that is, the plaintiff, he is going to

have a reduced recovery based on the amount of the third-party

defendants' liability.

          MR. LEVINE:  Correct.

          THE COURT:  All right.

          Now, why is this contribution claim, then, necessary

when the defendants' liability will be limited to their fair

share of the damages?

          MR. LEVINE:  Because the Fox Horan Defendants should

not be left pointing to an empty chair at trial.  Everybody

allegedly responsible should be in the courtroom in front of

the jury.  The issue here is not prejudice.  The issue is

whether the stipulation of discontinuance, by its terms, covers

Adam Sherman.  It does not.  The issue is whether the

stipulation delivered to Robert Malta was delivered in good

faith.  It was not.  The issue is whether the postjudgment

delivery of a release extinguishes a claim for contribution.

I7QKMALC

1    It does not.

2            There is a judgment in the state court action.  There

3    was a settlement with Robert only.  Both the Fox Horan

4    Defendants and Adam Sherman were identified as tortfeasors in

5    that state court complaint.  It is not necessary for them to

6    have been named as defendants for General Obligations Law

7    15-108 to cover the disposition of the contribution claim.

8            As your Honor pointed out, if you look at the statute,

9    15-108 does not refer to plaintiffs, or defendants, or to

10   parties in a case, it refers to persons liable or claimed to be

11   liable.  It refers to the releasor, it refers not to asserted

12   claims.  Likewise, Article XIV of the CPLR, which governs

13   claims for contribution, refers to two or more persons who are

14   subject to liability for damages for the same personal injury,

15   for the same injury, have a claim for contribution.  You do not

16   need a lawsuit in order to have a claim for contribution.

17           In fact, in CPLR --

18           THE COURT:  Well, if you don't have a lawsuit, how do

19   you enforce your claim?

20           MR. LEVINE:  Excuse me?

21           THE COURT:  If you don't have a lawsuit, how do you

22   enforce your claim?

23           MR. LEVINE:  It's interesting.  One of the cases cited

24   by the third-party defendants answers your question, your

25   Honor.  Makeun versus State 471 N.Y.S.2d 293.  It's interesting

I7QKMALC

1   to look at the facts of that case.  There, a plaintiff

2   passenger sues a landowner in Supreme Court for creating a

3   hazardous condition that caused the car crash.

4           THE COURT:  A car crash?

5           MR. LEVINE:  Yes.  The car crashes, I think, into a

6   tree, and the passenger sues the owner of the land on which the

7   tree --

8           THE COURT:  The landowner?

9           MR. LEVINE:  Sues the landowner, yes.

10          The landowner brings a third-party action against the

11  driver, who is the passenger's sister.  Prior -- prior, this is

12  key -- prior to the entry of judgment, the plaintiff gives a

13  release to the landowner in exchange for cash, full settlement.

14  The landowner then brings a separate action in the Court of

15  Claims against the State of New York, alleging that the state

16  did not properly maintain the road.  Now, the state was not a

17  party in that Supreme Court action, and could not have been a

18  party in that Supreme Court action.  You could only sue the

19  state in the Court of Claims.  But there was no extant claim

20  against the state.

21          Can the landowner seek contribution from the state?

22  No.  Even though the State of New York was not a party, the

23  prejudgment settlement extinguished the contribution rights.

24  15-108 will apply whether there is a lawsuit or not.  And

25  that's the same holding that Judge Werker in this court,

I7QKMALC

1    Westwood Chemical Company versus --

2            THE COURT:  That's 35 years ago.  Judge Werker's case

3    was 35 years ago.

4            MR. LEVINE:  Correct, 1983.  Exactly, your Honor.

5    Westwood Chemical Company versus Kulick, 570 F.Supp 1032.

6            In that case, an employer sued two former employees,

7    saying that the employees had lured -- had brought about a

8    termination of an exclusive sales representation agreement and

9    lured the client away for themselves.  Prior, prior, to the

10   commencement of any litigation, the employer settled with the

11   client and delivered a release.  There is then a lawsuit and a

12   trial against the employees.  They're found liable for taking

13   the client, but they cite the General Obligations Law 15-108

14   and say any amount paid by the client has to be given as a

15   credit against our liability.  Judge Werker agreed with them.

16           Here, we have a much different situation.  It's

17   similar in that neither Fox Horan, nor Adam Sherman were

18   parties in the state court litigation, but the significant

19   difference is, there is a judgment in that state court

20   litigation.  There is a stipulation of discontinuance with

21   prejudice that indisputably effects an adjudication on the

22   merits.  We have a judgment.  And what does that judgment say?

23   Robert Malta is zero percent liable.  That means everybody else

24   is 100 percent liable.  But those contribution claims were not

25   extinguished by the judgment, they survived.  And now you have

I7QKMALC

 1    a postjudgment settlement with Adam Sherman.  Diego Malta gives

 2    him, how conveniently, a year later after this lawsuit is

 3    commenced, a release.  But it doesn't do him any good.  It's a

 4    postjudgment settlement.  15-108 will govern here.  And the law

 5    is clear that you do not change judgments.

 6            So the release does not preclude a claim for

 7    contribution against Adam Sherman.

 8            THE COURT:  Okay.  Are you finished your argument now?

 9    You've had 20 minutes.

10            MR. LEVINE:  Okay.  Thank you, your Honor.

11            THE COURT:  Okay.  Are you finished?  I said --

12            MR. LEVINE:  Am I finished?  I'm sorry, no, just --

13            THE COURT:  You don't have to be sorry, just wrap it

14    up.

15            MR. LEVINE:  Yes, certainly.

16            As for res~judicata, we make it -- this is one other

17    point about whether people are parties and whether 15-108 will

18    apply:  We cite two cases, Chase Manhattan Bank versus Akin

19    Gump.  I direct your Honor's attention to 763 N.Y.S.2d at 593,

20    in which the First Department said 15-108 defines "the effect

21    of a settlement would have on each potential claim not disposed

22    of by the terms of the settlement agreement."  So 15-108 will

23    apply to those potential claims against Adam Sherman and the

24    Fox Horan Defendants that were identified in Diego Malta's

25    state court complaint.

I7QKMALC

1          The New York Court of Appeals in Rock versus Reed

2     Prentice, I direct your Honor's attention to 382 N.Y.S.2d at

3     723.  The purpose of 15-108, says the Court of Appeals, is "to

4     promote settlements in multiparty tort cases by clearly

5     defining the effect the settlement will have on collateral

6     rights and liabilities in future litigation."  It doesn't have

7     to be pending or present litigation.

8          As for res~judicata, which your Honor asked

9     Mr. Sherman about:  Clearly, there is absolutely no privity

10    between any of the parties in the state court action and any of

11    the Fox Horan Defendants.  That judgment cannot at all bind Fox

12    Horan.  And as we say in a footnote in the answering

13    memorandum, what's good for the goose or what's sauce for the

14    goose is also sauce for the gander.  If our claim of

15    contribution is wiped out, then certainly the main claim

16    against the Fox Horan Defendants gets wiped out, too, by that

17    judgment.  And, clearly, that's not what the third-party

18    defendants are arguing.  So res~judicata doesn't apply.

19          THE COURT:  Okay.

20          MR. LEVINE:  Thank you.

21          THE COURT:  Mr. Sherman?

22          MR. SHERMAN:  Your Honor, there is a fundamental

23    misunderstanding brought by the defendants' arguments.  Rock --

24    let me begin with Rock versus Reed practice.  First of all,

25    that dealt with GOL 15-108(c), which is a settlement.

I7QKMALC

1   15-108(c) provides that if a tortfeasor was attained, his own

2   release from liability shall not --

3          THE COURT:  Slower.  The court reporter won all the

4   awards as the fastest in the nation, but he only has ten

5   fingers.  Go a little slower and start with what you're saying

6   again.

7          MR. SHERMAN:  Sorry.  Reed practice applied GOL

8   15-108(c).  That subsection applies to a tortfeasor that has

9   got its release from its own liability.  The defendants do not

10  have such a release.  It's completely off base, as opposed to

11  what's happening here.

12         Another thing that's explicitly absent from their

13  argument is that they say, you've heard about three or four

14  times, the 3217 stipulation did not mention me.  What was

15  explicitly absent from that is that before the defendants

16  asserted this claim against me, the plaintiff released me.

17  They don't deal with that.  And they should check their papers

18  because they explicitly say that their only bar for a

19  contribution claim against me is that GOL 15-108 doesn't apply.

20  That's their argument.

21         And they've readily admitted that 15-108(a) is a

22  setoff, which means that there's no financial chance for

23  success here.  And, yet, they also make the claim that because

24  Robert Malta was released, that somehow 100 percent of the

25  liability -- but that's not what the statute says.  The statute

I7QKMALC

 1  | says -- 15-108(a) says it's whatever is greater is the setoff

 2  | at a trial.  To the extent that a jury could find Robert Malta

 3  | liable for any of the damages, it would be the percentage that

 4  | the jury decides, not the release.

 5  | THE COURT:  Now, let me ask you something because

 6  | nobody mentioned it so far, and I will mention it.

 7  | MR. SHERMAN:  Sure.

 8  | THE COURT:  As I understand it, in the defendants'

 9  | claim in the third-party complaint, there's an application for

10  | sanctions, isn't there?

11  | MR. SHERMAN:  Yes.

12  | THE COURT:  Against you, right?

13  | MR. SHERMAN:  No.  I'm --

14  | THE COURT:  You're claiming -- I'm sorry, I've got it

15  | backwards.  All right.  How am I going to sanction them?

16  | MR. SHERMAN:  Because there's no -- first of all, I

17  | didn't want to do that.

18  | THE COURT:  You didn't want to, but you did.

19  | MR. SHERMAN:  Because I'm terribly offended by this

20  | pleading, and they've had multiple chances to withdraw.  And

21  | there's no chance for success here, and they've admitted that

22  | up here.  And, by the way, the claim about the empty chair was

23  | expressly disclaimed in the report, which I attached to my

24  | brief by Daniel Capra, which was adapted by the Honorable Judge

25  | Jed Rakoff, that the claim of the empty chair was not a valid

I7QKMALC

1    reason to assert a contribution claim against two released

2    parties.

3         THE COURT:  That's something you'd like to argue,

4    particularly when there's going to be a jury trial.

5         MR. SHERMAN:  That is the law of the court, your

6    Honor.

7         The only reason why I asked for sanctions is because,

8    simply put, he was advised of the releases, he was advised that

9    there is no financial claim, there's no financial chance of

10   success here.  He ignored all those chances to withdraw, and,

11   instead, they reformulated this perjury theory, which makes no

12   sense, on the eve of the deadline to amend pleadings.  So

13   that's the reason, your Honor.

14        They haven't cited one -- and I'd like to further, the

15   Chase Manhattan case is another complete misapplication of GOL

16   108.  The reason why GOL 108 did not preclude contribution is

17   because Chase had settled its claim.  Here, the defendants have

18   not settled their claim.  That is a huge difference because

19   Chase was not entitled to 15-108(a)'s set-off provision.

20   That's why, because they wouldn't be faced -- in that scenario,

21   they would be faced with more than their fair share of

22   equitable damages, something that is impossible to happen here.

23        THE COURT: All right.  Are you finished?

24        MR. SHERMAN:  Yes.

25        THE COURT:  Okay.  Thank you very much.  I'm going to

I7QKMALC

1    reserve decision.  We are in recess.

2             MR. LEVINE:  Thank you, your Honor.

3                           * * *