1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  DIEGO ENRICO MALTA,

4                    Plaintiff,

5           v.                        17 cv 03228 (JFK) (OTW)

6  FOX HORAN & CAMERINI, LLP ET
   AL,
7
                   Defendants.
8                                     Conference
   ------------------------------x
9                                     New York, N.Y.
                                      January 22, 2019
10                                    3:00 p.m.

11 Before:

12                      HON. ONA T. WANG,

13                                    U.S. Magistrate Judge

14                        APPEARANCES

15 CATAFAGO FINI LLP
        Attorneys for Plaintiff
16 BY:  JACQUES CATAFAGO, ESQ
        ADAM B. SHERMAN, ESQ.
17

18      Attorney for Defendants
   BY:  PETER M. LEVIN, ESQ.
19

20 Also Present:  ALEXANDER M. YAMPOLSKY, PRO-SE

21

22

23

24

25

1            (Case called)

2            MR. LEVINE:  Peter Levin, counsel for the defendants.

3            MR. CATAFAGO:  Jacques Catafago, for the plaintiff.

4            THE COURT:  Who do you have sitting or standing at

5    counsel table with you?

6            MR. LEVINE:  This is Alexander Yampolsky standing to

7    my left, your Honor.  He is the target, if you will, of the

8    application before the Court.  He is appearing pro-se.

9            THE COURT:  Okay.

10           MR. SHERMAN:  And, your Honor, if I may?  I'm Adam

11   Sherman, for the third-party defendants.

12           THE COURT:  Okay.  For which third-party defendants?

13           MR. SHERMAN:  Myself and Robert Malta.

14           THE COURT:  Okay.  All right.  So, I guess maybe I

15   should ask Mr. Catafago:  You're plaintiff's counsel, right?

16           MR. CATAFAGO:  Yes, sir.

17           THE COURT:  You're sitting opposite from how

18   plaintiffs and defendants usually sit, so it's a little

19   confusing.  You can address me from a seated position if it's

20   more comfortable.  Just make sure that Ms. Smith can hear you.

21           MR. CATAFAGO:  Yes, ma'am.

22           THE COURT:  Okay.

23           So, if you could please just give me a brief summary

24   of the case and then the specific disputes that we have.

25           MR. CATAFAGO:  Yes, your Honor.

1          The case is a case of legal malpractice.  It was a

2    12(b) motion.  It was denied by Judge Keenan and really lays

3    out the factual framework.  In a nutshell, there was a gift

4    agreement that was prepared by the defendant law firm.  And it

5    resulted in a multimillion dollar tax liability, a liability

6    that was never discussed or explained to the client.  The

7    client was never told that the gift was unconditional, could

8    not be revoked and it resulted in a tax liability.  And as a

9    result, we brought the case for legal malpractice, and the

10   defendants moved to dismiss.  It was denied.  And there was a

11   third-party action against an attorney who also represented

12   Robert Malta, the original third-party defendant.  And then

13   they moved to dismiss.  That is still pending.

14         There is really no discovery dispute that the

15   plaintiff has with the movant, the defendant or its counsel,

16   Mr. Levine.  This is a nonparty subpoena.  We did not in any

17   way, shape or form communicate with the nonparty witness or

18   direct or instruct or advise him not to comply with the

19   subpoena.  As far as we're concerned, it should be complied

20   with.  It's a subpoena simply asking for the records and the

21   deposition concerning the appraisals that the nonparty witness

22   prepared.

23         And I think the disconnect, your Honor, is that

24   Mr. Yampolsky is here to speak for himself.  But I think the

25   disconnect is he feels he's an expert, he should be paid as an

1    expert.

2           I provided Mr. Levine with some of the cases on that

3    issue.  And I guess it's somewhat of a gray area.  But he's not

4    our expert.  We haven't identified him under Rule 26.  We

5    produced all the communications we had with this nonparty.  But

6    for whatever reason Mr. Levine wants to take the deposition.

7    And we take no position as plaintiff as to whether or not he

8    should be paid for that.

9           THE COURT:  Okay.  So Mr. Levine, you're the counsel

10   who subpoenaed Mr. Yampolsky, then?

11          MR. LEVINE:  That is correct.

12          This is a validly issued and properly served subpoena

13   upon a third-party witness with knowledge regarding material

14   facts.

15          The plaintiff -- there's one plaintiff -- claims he

16   owes a gift tax that hasn't been paid.  No gift tax has been

17   filed yet.  Needles to say, I disagree with Mr. Catafago's view

18   of the case, but within the realm of discovery, he and I have

19   gotten along very, very well.  All three individual defendants

20   have been deposed.  Two, third-party witnesses have been

21   deposed.  We have a deposition scheduled this Friday.  We have

22   two scheduled next week.  We have one scheduled in February,

23   another in March.  And we will soon schedule the depositions of

24   the plaintiff, his brother and his brother's counsel.  That

25   will probably take place in March.

1          Thousands of pages of documents have been produced,

2    not just by the parties but by third-party witnesses also.

3          Initially when I wrote to your Honor, I was seeking to

4    compel production of documents by Peter Traub, the former

5    counsel of the plaintiff, Diego Malta, in a state court action

6    to rescind his gift agreement.  Mr. Traub, on Friday evening,

7    finally completed his production.  He and I have no dispute.

8    And he asked me by email this morning if it was really

9    necessary for him to appear.  I said no and that I would

10   explain to the Court that the dispute had been resolved.  And

11   so, he's not here.

12         THE COURT:  Okay.

13         MR. LEVINE:  So, with regard to Mr. Yampolsky, he

14   prepared the appraisals of the two properties that the

15   plaintiff conveyed by gift to his mother.  And it's on the

16   basis of those appraisals that a draft gift tax return has been

17   prepared.  So, I served a subpoena on Vincent Xiao, the

18   accountant who prepared that return.  He is scheduled to be

19   deposed next week, Wednesday, the 30th.  He has produced

20   documents.  So, certainly the defendants are within their

21   rights to serve a subpoena on the person who prepared the

22   appraisal upon which the damages are being alleged.

23         At first I got signals that Mr. Yampolsky would

24   comply.  I received a voice mail from him saying, okay, I'm out

25   of the country now, but when I get back, I'll call you, we'll

1   set up a meeting.  I thought, okay, that's a good sign.  And a

2   day or two later, I got a letter by first-class mail -- no

3   return address -- from a friend of his, saying that

4   Mr. Yampolsky was out of the country and would contact me upon

5   his return.  I said, okay, that's fine.  Next thing I know,

6   there's a letter written to the Court filed in the ECF system

7   stating that the subpoena should be quashed and there should be

8   no deposition.  I had an email exchange with Mr. Yampolsky on

9   the subject.  I was wondering why all this was necessary and in

10  any event he had to be paid as an expert if I wanted to depose

11  him.

12          I'm not seeking to make him my expert.  He's not

13  entitled to an expert fee of $175 an hour.  He's entitled to a

14  witness fee as provided in the Federal Rules of Civil

15  Procedure.  He is a fact witness.  Who did you speak to?  What

16  did you do?  Let me see your work papers.  Let me see your

17  notes.  Let me see your emails.  Basically, let me have your

18  whole file on this project, which was very discrete, and let me

19  ask you what said, what you saw and what you did.  This is as

20  basic as it gets.  And why we have to be here on this is really

21  a mystery to me.  But Mr. Yampolsky, I guess, will give his

22  view of the matter.

23          But the bottom line is the defendants are seeking

24  relevant information in accordance with Rule 26.  They served a

25  valid subpoena under Rule 45, and we should have hard discovery

1    without any qualification.

2            THE COURT:  Okay.  Mr. Yampolsky, I really am at a

3    loss to understand why you haven't yet complied with the

4    subpoena.

5            MR. YAMPOLSKY:  These are contractual obligation

6    issues in this kind of arrangement.  Adam Sherman signed the

7    contract when he ordered the number of operations back in 2016.

8    And this contract -- we call it engagement in the appraisal

9    industry.  He agreed with all the limiting conditions in these

10   appraisals.

11           All my assumptions to limiting conditions circle

12   statements.  The submission of this report does not require

13   future testimony or appearing in court, or any publications to

14   develop arrangements for this.

15           Furthermore, there is another part of this.  I'm sure

16   all the authorities state -- not going into the details, except

17   for maybe otherwise stated in any verbal, or letter, of

18   engagement, the appraiser shall not be required to give

19   testimony in any court or administrative proceeding -- the

20   property or the appraisal.  And if at some time, future date,

21   such testimony is required, then separate fee arrangement

22   covering that engagement will be required between the appraiser

23   and the parties requesting testimony.

24           If you would like, your Honor, you can have all these

25   documents.

```
 1            THE COURT:  So, I'm still trying to understand what

 2    your position is.

 3            Are you saying that the subpoena was not properly

 4    served, or are you saying --

 5            MR. YAMPOLSKY:  No.

 6            THE COURT:  Wait.  Or, are you saying that you should

 7    not be required to testify unless you're paid an additional

 8    amount?

 9            MR. YAMPOLSKY:  Absolutely.

10            THE COURT:  Okay.  That's not how a subpoena works,

11    especially when you're a fact witness.

12            MR. YAMPOLSKY:  I'm not aware on being fact witness.

13    All of this is breach of a contract.

14            THE COURT:  Who's the other person on the contract?

15            MR. YAMPOLSKY:  Adam Sherman.

16            THE COURT:  Who's Adam Sherman in relation to this

17    case.

18            MR. YAMPOLSKY:  He represented the plaintiff in this

19    case.

20            MR. CATAFAGO:  Your Honor, if I may?

21            THE COURT:  Yes.

22            MR. CATAFAGO:  Mr. Sherman was the attorney for Robert

23    Malta, who was in the process of getting the tax returns ready

24    to the accountant who's going to testify next week.  And as

25    part of that process, this appraisal was engaged.  And what
```

1    he's referring to is the engagement letter.

2            THE COURT:  Okay.  And Mr. Sherman is set to be

3    deposed next week or?

4            MR. SHERMAN:  Sometime in March, your Honor.

5            THE COURT:  Okay.

6            MR. CATAFAGO:  Your Honor, if I may.

7            Although plaintiff doesn't take any position at all, I

8    think certainly Rule 45 is very clear and is not proper to just

9    ignore a subpoena.  It may be that the testimony is not

10   necessary.  I mean, that remains to be seen.  We've produced

11   all the communications with the appraiser.  The person who

12   hired the appraiser's going to testify.  The person who

13   prepared the tax return as a basis for the damages is going to

14   testify that relied on the appraisal.  And in addition, the

15   defendants produced the same appraisal reports in their

16   discovery.

17           MR. LEVINE:  Your Honor, it's not up to Jacques

18   Catafago to tell me whether a witness's testimony is necessary

19   or unnecessary.  I decided with my client to have a subpoena

20   issued upon Mr. Yampolsky.  Mr. Catafago began this conference

21   by stating that the plaintiff takes no position.  I think he

22   should adhere to that position and say nothing about the

23   defendant's rights to depose third-party witnesses.

24           THE COURT:  I don't think he was saying anything about

25   your right to take a particular deposition or in any order, or

1   to serve a particular subpoena or not.

2           MR. LEVINE:  Okay.

3           THE COURT:  I think it's very important to keep that

4   clear.  What I heard from Mr. Catafago is perhaps compelling

5   Mr. Yampolsky to be deposed sooner rather than later may not be

6   necessary, especially if he's going to be, you know, raising

7   roadblocks and objections to being deposed.

8           MR. LEVINE:  Right.

9           THE COURT:  So, what I propose is that we schedule --

10  since Mr. Yampolsky is here, that we schedule with Yampolsky a

11  date certain for his deposition to take place sometime after

12  Mr. Sherman's deposition and then, you know, after

13  Mr. Sherman's deposition, you'll be in a better position to

14  assess whether you really want to go through all this trouble

15  with Mr. Yampolsky.

16          MR. LEVINE:  Right now we have a discovery cutoff from

17  Judge Keenan of April 10th.  We do not yet have dates for

18  Mr. Sherman's deposition, or for the plaintiff's deposition or

19  for the deposition of the plaintiff's brother, Robert Malta.

20          MR. CATAFAGO:  We can get that --

21          MR. LEVINE:  If you're telling me to wait until after

22  those depositions are taken to depose Mr. Yampolsky, we're

23  coming up against a discovery deadline.  Also, even though

24  deposition dates I'm sure will be set in good faith by the

25  Malta brothers and Mr. Sherman, life has a strange way of

1    interfering with the plans of lawyers, and those depositions

2    may not proceed as initially scheduled.  We could find

3    ourselves taking depositions very close to the discovery

4    cutoff.  And I don't want to lose the opportunity to depose

5    Mr. Yampolsky because of scheduling issues.  This problem

6    arises only because of his recalcitrance.

7              I offered dates for his depositions in January, this

8    month, and I've tried to work with him.  And I tried to make

9    this conference unnecessary.  And I don't see why the

10   defendants should be penalized or --

11             THE COURT:  You're going to get your deposition.

12   You're going to get your deposition.  If you think you need the

13   deposition, you're going to get your deposition.

14             What we're talking about now is finding a

15   cost-effective and efforts-effective way to talk about the

16   timing of this deposition.

17             MR. LEVINE:  Fair enough, your Honor.

18             THE COURT:  Mr. Yampolsky, you're here.  You are going

19   to get deposed.  You are going to have to comply with this

20   subpoena if it turns out that Mr. Levine decides that your

21   testimony is necessary; okay?  What I'm trying to do right now

22   is to do you a small favor, which frankly you probably don't

23   deserve because you have ignored a subpoena, which is a Court

24   order to appear for deposition.

25             But what I'm trying to do now unfortunately is, in

1   effect, rewarding you for being rather evasive with Mr. Levine.

2   But now that you're here before me, if your deposition needs to

3   go forward, there will be no more games.  You will set a date,

4   you will adhere to it, you will appear, and you will answer

5   questions truthfully.  You will provide documents, as requested

6   in any document requests.  All right?  That is going to be a

7   given.

8          However, what I'm doing right now is I am trying to

9   see if there is a way to set this up, schedule wise, that may

10  make it a little bit easier on everybody, including the counsel

11  in this case, so they don't have to keep applying to the Court

12  to get you to comply.

13         So, this case has been referred to me for general

14  pretrial.  So, Mr. Levine, rest assured, if you believe that

15  you need Mr. Yampolsky's deposition, and it can't be scheduled

16  for whatever scheduling reasons until after what is currently

17  set as a discovery end date, you will get an extension so that

18  you can get Mr. Yampolsky's deposition.  Okay?

19         MR. LEVINE:  Thank you, your Honor.

20         THE COURT:  That said, since we have Mr. Yampolsky

21  here, why don't we take a five-minute break to see if

22  Mr. Yampolsky -- to see if you can set a time and a date to

23  have your deposition taken whether it makes sense for you to do

24  it sooner rather than later anyway so you can get this over

25  with, or whether it makes sense for you to do it in the spring,

1    in the hopes that the other witnesses will provide the

2    information that the defendants otherwise need from you.  But I

3    cut Mr. Levine off.

4              Go ahead.

5              MR. LEVINE:  I would suggest, your Honor, we set two

6    dates.  The first would be to produce documents, and much

7    sooner rather than later.  So that way, if necessary, I could

8    use those documents at the depositions.  That would be very

9    nice to have documents before Vincent Xiao's deposition next

10   Wednesday.  That may not be possible.  I'm really willing to

11   live with that.  I am certainly not going to reschedule an

12   accountant's deposition to try to push it back into the tax

13   season.  That's a total non-starter.  That would be a disaster.

14   In fact, we scheduled the deposition to accommodate Mr. Xiao's

15   tax season.

16              But to have documents from Mr. Yampolsky in advance of

17   Adam Sherman's deposition, and in advance of Raul Escarza's

18   deposition.  Raul Escarza is an accountant who works for Robert

19   Malta and has had a role in this case.  That would be helpful.

20   And I don't think I'm asking for very many documents.  As I

21   said, it's a discrete project.  It was basically every email

22   you've had, every correspondence, if anyone sends letters

23   anymore, that you had, notes that you've taken, reports that

24   you've made about these properties and communications with

25   these people.  It's all laid out in the subpoena.  Whatever is

1    in his file, turn over.

2          I'm happy to take it in hard copy and scan it myself.

3    I'm happy to take it electronically, bate-stamp it myself.  I

4    will process the paper to keep the cost on Mr. Yampolsky to a

5    minimum.  But it's been a very long time since the subpoena's

6    been served.  Mr. Yampolsky certainly has easy access to his

7    file.  And frankly I don't think he needs more than another

8    week to produce this.

9          THE COURT:  Okay.  All right.  Go ahead,

10   Mr. Yampolsky.

11         MR. YAMPOLSKY:  As far as producing the documents, he

12   can have them this evening via email, whatever I have in my --

13   I don't have any paper.

14         THE COURT:  So, your documents are all electronic?

15         MR. YAMPOLSKY:  Right.  So, please write down the what

16   the documents are that do you need, and I'll --

17         MR. LEVINE:  Look at the subpoena.  Everything is in

18   the subpoena.

19         THE COURT:  Well, okay.  Stop.  You're here.  One of

20   you is a lawyer, one of you is not.

21         So, Mr. Levine, you need to speak to Mr. Yampolsky as

22   if he's not a lawyer, because he's not a lawyer.  Okay?  It's

23   not productive to just say, go look at the subpoena.  This is

24   why we're here now.  We have a court reporter here now.  What

25   I'm going to do is I'm going to step off the bench for ten

1   minutes.  I want you to be here speaking so that Ms. Smith can

2   hear you, so that it will be recorded in the transcript because

3   Mr. Yampolsky is here pro-se and he's not a lawyer, so that we

4   all know when he's agreed to produce his documents, what is the

5   scope of what he's agreeing to produce.  And then you're going

6   to set a date for Mr. Yampolsky's deposition that's a little

7   further in the future.

8          In addition to that, when I come out, I will set a

9   status letter date for Mr. Levine and Mr. Yampolsky only, a

10  joint status letter apprising me of when the document

11  production has been completed.  Okay?  Because Mr. Yampolsky is

12  here without a lawyer, because you have this history where he

13  hasn't previously complied with the subpoena --

14         Mr. Yampolsky, I'm going to be watching you.  I'm

15  going to make sure that you comply; okay?  And if you have an

16  issue about whether you believe you should be paid or not, that

17  is not your fight with Mr. Levine.

18         MR. YAMPOLSKY:  Well, with whom?

19         THE COURT:  Sorry?

20         MR. YAMPOLSKY:  With whom shall I file?

21         THE COURT:  Who's on the contract?

22         MR. YAMPOLSKY:  Oh, okay.

23         THE COURT:  We're going to break for ten minutes.

24         I can't give you legal advice.  Okay?  You may ask the

25  other lawyers in the room after I step off the bench.  I'm

 1   going to ask Ms. Smith to stay on the record with you, make

 2   sure that she can hear you.  I want you to do what's called a

 3   meet and confer with Mr. Levine and work out those dates

 4   yourselves.

 5          If you can't work out those dates, I'm going to set

 6   them.  And then if you don't meet those dates or there's some

 7   other reason that you can't comply with those dates, bad things

 8   happen; okay?  Unless you have a very good reason for not

 9   complying with those dates, there will be trouble to follow.

10   So, really it's in your best interests to work everything out

11   with Mr. Levine as much as you can right now and be ready with

12   dates when I come back out in ten minutes.  Okay?

13          (Judge not present)

14          MR. LEVINE:  Mr. Yampolsky, is February 21st, which is

15   a Thursday, convenient for you for a deposition?

16          MR. YAMPOLSKY:  Yes, it is.

17          MR. LEVINE:  So, come to my office at 9:30 a.m. that

18   day.  I'm at 444 Madison Avenue, which is between 49th and 50th

19   Street.  I'm on the fourth floor.

20          MR. CATAFAGO:  And that works for the plaintiff, as

21   well.

22          MR. LEVINE:  Mr. Catafago and I have conferred with

23   Mr. Sherman, and February 21st is convenient for counsel as

24   well as for Mr. Yampolsky.  So, let the record show we're all

25   now putting it in our diaries.

 1            Mr. Yampolsky said he is able to produce to me this

 2   evening, by email, documents responsive to the subpoena.

 3   First, let me put my email address on the record.  It is:

 4   chief@pmlevinelaw.com.

 5            I am going to review with Mr. Yampolsky the documents

 6   requested by the subpoena, which is in front of both of us at

 7   the counsel table, so he'll have instructions on what to

 8   produce.

 9            Is that okay with you, Mr. Yampolsky?

10            MR. YAMPOLSKY:  It is.

11            MR. LEVINE:  Good.  Okay.  So, if we go to page two of

12   the subpoena, there is a schedule of documents to be produced.

13   And in paragraph one, it requests for the period January 1st,

14   2016 through the present.  Each document memorializing any

15   communications with -- and then there's a list of people.  And

16   that list is Diego Malta, which is the plaintiff.  If you had

17   any communication with him, either by email, or fax, text or

18   whatever you have, if you communicated with him, you're going

19   to give those documents to me.

20            Do you understand?

21            MR. YAMPOLSKY:  I do.  As a matter of fact, I don't

22   have anything --

23            MR. LEVINE:  I understand, sir.  If you don't have a

24   document, you don't have to produce it.  You don't have to

25   create a document that doesn't exist.  You produce only what

1    you have.

2           MR. CATAFAGO:  Give him a list.

3           MR. LEVINE:  I'm going to give you the list of all

4    these people.

5           First is Diego Malta; Robert Malta; Raul Escarza;

6    Vincent Xiao; VX Accounting & Tax, that's Mr. Xiao's company;

7    Tarek Alam; Adam Sherman; Jacques Catafago -- and these two

8    gentlemen are to our right; the law firm, Catafago Fini, LLP,

9    Mr. Catafago's law firm.

10          If you had communications with any of those people,

11   you're going to produce them; okay?

12          MR. YAMPOLSKY:  Whatever I can.

13          MR. LEVINE:  Fine.

14          The other is any retainer agreement.  Retainer

15   contract, retainer agreement, retainer letter, whatever you

16   want to call it, okay.

17          MR. CATAFAGO:  The engagement letter.

18          MR. LEVINE:  The engagement letter between either you

19   or your company, Manhattan Real Estate Appraisals, and the same

20   list of people.  Let's go through the list -- somewhat modified

21   list:

22          Diego Malta, if you had an engagement letter with him,

23   you hand it over.

24          Robert Malta.  Their mother, Dina Malta.

25          Then, 106-108 West 73rd Street Associates, LLC.  And

 1    110 West 73 Associates, LLC.

 2            114 West 73rd Street Realty Corp.

 3            635, 9th Avenue Corp.

 4            202, 8th Avenue, LLC.

 5            Adam Sherman.  Catafago Fini, LLP.

 6            If you have a retainer agreement, engagement agreement

 7    with any of these people, persons or entities, you're going to

 8    give it to me, okay?

 9            MR. YAMPOLSKY:  Will do.

10            MR. LEVINE:  Good.

11            MR. CATAFAGO:  To be clear, so, the only engagement

12    letter you had is the one you referred to; is that right?

13            MR. YAMPOLSKY:  Yes.

14            MR. CATAFAGO:  Who's that with?

15            MR. YAMPOLSKY:  This is to Adam only.

16            MR. CATAFAGO:  Right, so you're going to give that to

17    Mr. Levine.

18            MR. YAMPOLSKY:  Yes.  I've got the electronic copy.

19            MR. LEVINE:  Fine.  I don't know what's in your file,

20    sir.  That's why with the subpoena or a document request, the

21    requests are often very wide in scope.  You never know what

22    somebody might have, so you have to ask.

23            MR. YAMPOLSKY:  Sure.

24            MR. LEVINE:  Okay.  The third category of documents

25    are invoices.  All invoices that you or your company, Manhattan

1    Real Estate Appraisals, have sent to Diego Malta, or to Robert

2    Malta, or to Dina Malta, or to 106, 108 West 73rd Street

3    Associates, LLC; 110 West 73 Associates, LLC; 114 West 73rd

4    Street Realty Corp.; 635 9th Avenue Corp.; 202 8th Avenue, LLC;

5    Adam Sherman or Catafago Fini, LLP.

6              If you've sent an invoice for any work on this

7    project, I want that invoice?  Okay?

8              MR. YAMPOLSKY:  All right.

9              MR. LEVINE:  Do you keep time sheets.

10             MR. YAMPOLSKY:  No.

11             MR. LEVINE:  You don't record your time at all?

12             MR. YAMPOLSKY:  No.  No, I don't.

13             MR. LEVINE:  So, category four relates to time sheets.

14    So, if you don't keep time sheets, there's nothing for you to

15    give me.  You sent an invoice.

16             Have you gotten paid for your work?

17             MR. YAMPOLSKY:  I don't remember.  I think I got a

18    verbal agreement.  They gave me half in the beginning and gave

19    me half afterwards.  I have no invoice.

20             MR. LEVINE:  Fair enough.

21             Whatever documents you have showing who paid you.  If

22    you have a copy of a check, if you wrote a memo, if there's a

23    cover letter, Dear sir, here is our check signed by whomever,

24    any document memorializing showing who paid you, I want that

25    document.  Okay?

1              MR. YAMPOLSKY:  If I have it, you're going to have it.

2              MR. LEVINE:  Good.  That's fine.

3         Okay.  Next, all the appraisals for 106-108 West 73rd

4    Street Associates or for the real property owned by that

5    company, all right?

6              MR. YAMPOLSKY:  All right.

7              MR. LEVINE:  Don't say you already have it, you got it

8    from somebody else.  That doesn't count.  I want it from you.

9              MR. YAMPOLSKY:  Okay.

10             MR. LEVINE:  Okay.  Now, if you wrote notes, if you

11   have work papers for those appraisals -- sometimes you're going

12   to write notes or do an outline or whatever you do, and then

13   you turn that into an appraisal, I want those underlying work

14   papers if you have them.  Okay?

15             MR. YAMPOLSKY:  All right.

16             MR. LEVINE:  And that is for 106-108 West 73rd Street

17   Associates.  Okay?

18             MR. YAMPOLSKY:  Okay.

19             MR. LEVINE:  Same thing for 110 West 73 Associates

20   LLC, the appraisal and the work papers.  Okay?

21             MR. YAMPOLSKY:  All right.

22             MR. LEVINE:  Same thing.  All appraisals for 114 West

23   73rd and all work papers for 114 West 73rd; okay?

24             MR. YAMPOLSKY:  Yes.

25             MR. LEVINE:  Same thing for 635 9th Avenue, appraisals

1    and work papers.  Okay?

2              MR. YAMPOLSKY:  Yes.  Okay.

3              MR. LEVINE:  And same thing for 202 8th Avenue,

4    appraisals and work papers.  Okay?

5              MR. YAMPOLSKY:  Yes.

6              MR. LEVINE:  We've gone through the subpoena.

7    Basically Mr. Yampolsky has agreed to produce everything that's

8    requested that he has, and he plans to do that, by email, this

9    evening.  So, we've set a date for his deposition, we've set a

10   date for production, we've set dates for production, and I

11   think we've accomplished what we set out to do today.

12             (Pause)

13             THE CLERK:  Court is back in session for 17 cv 03228,

14   Malta v. Fox Horan & Camerini, LLP et al.

15             THE COURT:  Please be seated.

16             So, Mr. Levine and Mr. Yampolsky I'm eager to hear

17   what you've worked out.

18             MR. LEVINE:  Okay.  We had a very pleasant discussion.

19             First, in consultation with Mr. Catafago and

20   Mr. Sherman, we agreed on a date for Mr. Yampolsky's

21   deposition, and that's February 21st at 9:30 a.m., in my

22   office.  I reviewed with Mr. Yampolsky the schedule of

23   documents upended to the subpoena, and he agreed to produce

24   everything requested to the extent he has such documents in his

25   possession.  He mentioned that some documents requested just

 1    don't exist.  And I explained that certainly he's not required

 2    to produce a document that doesn't exist, that he doesn't have.

 3           So, I think we have resolved this controversy, this

 4    dispute between us, and I'm looking forward to receiving this

 5    evening from Mr. Yampolsky the documents responsive to the

 6    subpoena.

 7           THE COURT:  All right.  So, given that you agreed for

 8    a deposition date on the 21st, does it make more sense to have

 9    a joint status letter before then or after that?

10           MR. LEVINE:  I would suggest after, your Honor,

11    because if for whatever reason there's a snafu with the

12    document production, there's no reason we should be running

13    back here.  We can try to work it out.

14           THE COURT:  Okay.

15           MR. LEVINE:  And if for whatever reason the deposition

16    doesn't go forward as scheduled, then we can write to

17    your Honor and say, we have a problem, we have to come back, or

18    we have a problem but we're trying to work it out and don't

19    have to come back at this time or, we've accomplished what we

20    set out to do and this chapter is closed, which is the letter

21    I'd like to write.

22           THE COURT:  That's the letter I'd like to read too,

23    I'm sure.

24           Okay.  So, why don't we set February 28th, close of

25    business, for joint status letter.  And that's a joint status

1    letter between Mr. Levine and Mr. Yampolsky.

2            And when I say joint status letter, what I really mean

3    is, Mr. Levine, that you'll be the one responsible for writing

4    it since it was your motion.

5            MR. LEVINE:  Yes.

6            THE COURT:  But make sure you show it to Mr. Yampolsky

7    and get his points in evidence.

8            MR. LEVINE:  Yes.  That was my intention, your Honor,

9    that I would prepare a letter, show Mr. Yampolsky a draft, ask

10   him for whatever questions or comments he might have, give him

11   a day or two to look it over.  Whenever I write such rather

12   letters, I make sure it's fair to both sides and get the letter

13   to your Honor and file it.

14           THE COURT:  Anything else to deal with today?

15           MR. LEVINE:  Not as far as I'm concerned, your Honor.

16           THE COURT:  Okay.

17           MR. CATAFAGO:  No.

18           THE COURT:  Mr. Yampolsky, the dates that Mr. Levine

19   just put on the record, they are Court-ordered, in the sense

20   that if you don't show up without good reason or without having

21   talked to Mr. Levine or anything like that, and with his

22   knowledge, like if you don't show up and you don't give my

23   reasons and you haven't agreed to another date, then you are in

24   violation of a Court order; all right?  So, this is very

25   serious.  I mean, the transcript alone is the court order, but

1   for good measure we're going to enter another order either late

2   tonight or tomorrow morning.

3          And, Mr. Levine, since it's your motion, once it hits

4   the docket, I'm also directing you to serve a paper copy of the

5   order on Mr. Yampolsky so that he has it.

6          MR. LEVINE:  Can I do that by mail or do I need a

7   process server?

8          THE COURT:  No, no, no.  You can do it by mail.  You

9   can do it by email.  I used the term "serve."

10          But, Mr. Yampolsky, since you're here for the oral

11   order as it is, you know the paper order, or electronic order

12   as it were, is confirmation that this is a court order.

13          And I look forward to your letter on the 28th.

14          Is there anything else we need to deal with today?

15          MR. LEVINE:  No, Your Honor.

16          THE COURT:  Okay.  I'm going to direct that the

17   parties share the cost of the transcript three ways.  Order the

18   transcript, share the cost three ways, when it comes in,

19   provide a copy to Mr. Yampolsky as well.  Okay?  And that can

20   be electronic.  It doesn't have to be by mail.

21          Mr. Yampolsky.

22          MR. LEVINE:  I don't need a copy, so you can send it

23   to the attorneys.  I don't need a copy.

24          THE COURT:  Okay.  In that case, I mean I generally

25   make it a practice to make sure any pro-se parties who appear

1    have a copy of the transcript so they can refer to it if they

2    have any questions.  My order to order the transcript and share

3    the cost among the counsel stands.

4              Mr. Yampolsky, you're free to work it out with counsel

5    whether you want a copy or not.  All right?

6              We are adjourned.  Thank you.

7              MR. LEVINE:  Thank you, your Honor.

8              MR. CATAFAGO:  Thank you, your Honor.

9              (Adjourned)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25